IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REGINALD SUTTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 1:21-cv-946 |
| | § | |
| | § | |
| KAUFMAN LYNN | § | |
| CONSTRUCTION, INC. | § | |
| | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff, REGINALD SUTTON, files this Complaint and Jury Demand against Defendant KAUFMAN LYNN CONSTRUCTION, INC. alleging willful violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 1981, and the Texas Commission on Human Rights Act. For causes of action, Plaintiff would show the Court as follows:

## I.
## PARTIES, JURISDICTION, VENUE, AND
## ADMINISTRATIVE EXHAUSTION

1.      Plaintiff, REGINALD SUTTON , is a resident of Brown County, Texas.

2.      Defendant KAUFMAN LYNN CONSTRUCTION, INC. is an entity which can be served with Citation through its Registered Agent, Corporate Creations Network Inc., 5444 Wetheimer #1000, Houston, Texas 77056.

3.      At all times relevant to this case, Defendant KAUFMAN LYNN CONSTRUCTION, INC. acted as Plaintiff's employer.

4.      This Court has jurisdiction to hear the merits of Mr. Sutton's claims under 28 U.S.C. §1331. The Court has supplemental jurisdiction over Mr. Sutton's claims arising under Texas statutory law under 28 U.S.C. §1367. Venue is proper in this district and division under 28 U.S.C. §1391(b)(1) because the incidents that gave rise to the claims in this case occurred within this district and division.

5.      Plaintiff exhausted his administrative remedies in this case by filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission and the Texas Workforce Civil Rights Division on August 14, 2020, within 180 days of his termination on July 28, 2020. Plaintiff received a Right to Sue notice from the U.S. Equal Opportunity Commission on July 23, 2021, within 90 days of the filing of this lawsuit.

## II.
## FACTUAL BACKGROUND

6.      Mr. Sutton was hired by the Defendant in June 2019 as a Foreman. He is African-American.

7.      When Mr. Sutton was first hired, his direct supervisors were Al Briggs and Matt House. Mr. Sutton worked on a job with them during the first approximately six months of his employment with Defendant.

8.      In or around February 2020, Mr. Sutton was assigned to a new project, where he reported to Matt Mann and several other managers. Mr. Sutton was the only Black employee assigned to work on that project. As the Foreman, he was a member of the management team for the project, and supervised and directed the work of Defendant's employees and contractors on the project.

9.      One of the other employees assigned to work on the same project as Mr. Sutton was an older Latino man named Matiz. Matiz used racial slurs toward Mr. Sutton every day. He called Mr. Sutton "nigger" regularly and made jokes about Black people eating watermelon and fried chicken. Mr. Sutton told Matiz that his remarks offended him, and Matiz responded that "that's just how we talk where I'm from." Mr. Sutton then went to his managers to report Matiz's racially harassing statements. They required him to attend a meeting with Matiz to discuss his concerns. However, even after the meeting Matiz continued calling Mr. Sutton "nigger" and making racial jokes about Black people. Plaintiff tried to avoid Matiz as much as possible, but was often unable to. The month after Mr. Sutton began working on the new project, the liaison for the apartment complex where they were working, who is white, asked Mr. Sutton if he was the "butler." Mr. Sutton told him that he was the foreman, but the liaison refused to speak with Mr. Sutton any further. Mr. Sutton told his managers about that, but was told that since the liaison worked for the owner of the apartment complex, there was nothing they could do about it.

10.     Around the same time, Mr. Sutton's direct supervisor, Matt Mann, called Mr. Sutton into his office because there was an "emergency." When Mr. Sutton arrived, Mr. Mann told him: "I need you to get the trash out from under my desk and throw it away, and I need you to go clean out the bathroom." Mr. Sutton told Mr. Mann that what he was asking him to do was not part of his job duties as Foreman, and that he was not Mr. Mann's slave.

11.     Shortly after that incident, Mr. House told Mr Sutton that when he was not around, the other managers, including primarily Matt Mann, talked about him like he was a dog, and that Mr. Mann referred to him as a "nigger" regularly.

12.     When Mr. House was brought over as an Assistant Superintendent to work on the current project, he was given Mr. Sutton's office, and Mr. Sutton had to move out to a makeshift office in the back of an 18-wheeler trailer. He was then told that he would have to move out of it soon, because other managers needed it for their office.

13.     In or around May 2020, Defendant hired Jeff Irby, a white man, to help out in the yard on the project. Defendant paid Mr. Irby $22.00/hr, while Mr. Sutton was being paid only $20/hr, although Mr. Sutton's responsibilities were at a significantly higher level than Mr. Irby's. Mr. Irby did not supervise anybody on the job, and performed only manual tasks, while Mr. Sutton supervised employees, directed their work, and performed manual tasks as well.

14.     In mid-May 2020, Mr. Sutton was hit by a car driven by one of Defendant's employees while he was driving a forklift. In June, he was assaulted and physically cut by a contractor named Robert, who supervised the trim and doors. Mr. Sutton reported these incidents to management, but nothing was done.

15.     Mr. Mann would, on a daily basis, assign Mr. Sutton more work than he could handle. He would give Mr. Sutton safety work, and require him to unload material, and do other manual tasks on top of his Foreman duties. Mr. House told Mr. Sutton that Mr. Mann and the Senior Superintendent were overloading him with work and wanted him to quit. Mr. Sutton did not want to quit, though, and was forced, in order to complete all of the work Mr. Mann required of him, to hire temporary laborers. Mr. Sutton paid the temporary workers out of his own pocket. Defendant never reimbursed him for these payments. In or around mid-June 2020, Mr. Sutton reported to Brian Cox, who works in Defendant's corporate office, that he believed he was being discriminated against because of his race in compensation, that he had been called a "nigger" and

that he had been assaulted at work. Mr. Cox told him: "that's just something you have to deal with. We need these people [contractors] here. If you want to stay here and work, you can work."

16.     On July 28, 2020, Defendant terminated Mr. Sutton's employment. The reason given for his termination, attendance, was a pretext for discrimination against him because of his race, and retaliation against him for reporting racial discrimination. After Mr. Sutton was fired, Defendant put Jeff Irby, a white man, in Mr. Sutton's position.

### III.
### CAUSES OF ACTION

### COUNT ONE
### DISCRIMINATION UNDER TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. SEC. 1981

17.     Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendant. Plaintiff received a notice of the right to sue from the EEOC within 90 days of the filing of this complaint.

18.     Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Plaintiff was discriminated against because of his race (African-American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

19.     Defendant is an employer within the meaning of Title VII.

20.     Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, "(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

21.     42 U.S.C. §1981 prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship.

22.     Defendant intentionally discriminated against Plaintiff because of his race in violation of Title VII and 42 U.S.C. §1981 by creating a racially hostile work environment, paying him less than lower-level white employees, and terminating his employment.  Defendant retaliated against Plaintiff in violation of Title VII 42 U.S.C. §1981 by terminating his employment. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages.

**COUNT TWO**
**DISCRIMINATION AND RETALIATION UNDER THE**
**TEXAS COMMISSION ON HUMAN RIGHTS ACT**

23.     <u>Discrimination</u>. The conduct of the Defendant towards Plaintiff, through its agents, employees, managers, and supervisors, as set forth above, among other activities constitutes discrimination on the basis of race, in direct violation of §21.001, et. seq., Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that;

> "An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee."

Plaintiff's race was a determining or motivating factor in Defendant's employment decisions regarding Plaintiff, including the decision to subject Plaintiff to a racially hostile work environment, to pay Plaintiff less than lower-level white employees, and to terminate Plaintiff's employment. Plaintiff's race moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

24.    <u>Retaliation</u>. In addition, Defendant retaliated against Plaintiff for making discrimination complaints and for otherwise opposing race discrimination by the employer. See Texas Labor Code §21.055. Plaintiff's discrimination complaints were a determining or motivating factor in Defendant's employment decisions regarding Plaintiff, including the decision to terminate Plaintiff's employment.

## IV.
## DAMAGES

25.    As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## V.
## COMPENSATORY DAMAGES

26.     Defendant intentionally engaged in an unlawful employment practice by discriminating against Plaintiff because of his race and retaliating against Plaintiff. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VI.
## PUNITIVE DAMAGES

27.     The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VII.
## ATTORNEYS' FEES AND EXPERT FEES

28.     A prevailing party may recover reasonable attorneys' and experts' fees under Title VII, 42 U.S.C. Sec. 1981, and the Texas Commission on Human Rights Act. Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services,and any appeals. Plaintiff additionally brings suit for expert fees.

## VIII.
## JURY DEMAND

29.     Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1.      The Court assume jurisdiction of this cause;

2.      The Court award Plaintiff damages as specified above;

3.      The Court award Plaintiff reinstatement or, in the alternative, front pay;

4.      The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5.      The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

THE LAW OFFICES OF KELL A. SIMON
501 North IH-35, Suite 111
Austin, Texas 78702
(512) 898-9662 Telephone
(512) 368-9144 Facsimile

/s/ Kell A. Simon
Kell A. Simon
State Bar No. 2406088
ATTORNEY FOR PLAINTIFF